Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO<br><br>Recurrida<br><br>v.<br><br>VASSALLO INTERNATIONAL GROUP, INC.; UNIVERSAL INSURANCE COMPANY; **MULTINATIONAL INSURANCE COMPANY**; INTEGRAND ASSURANCE COMPANY; QBE ÓPTIMA INSURANCE COMPANY<br><br>Peticionaria | TA2025CE00600 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Civil Núm.: J CD2018-0076 (605)<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de noviembre de 2025.

Comparece ante nos Multinational Insurance Company ("Multinational" o "Peticionaria") mediante *Petición de Certiorari* presentada el 10 de octubre de 2025. Nos solicita la revocación de la *Resolución* emitida el 11 de septiembre de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Ponce ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la moción de sentencia sumaria presentada por la Peticionaria, pues a juicio del foro *a quo* existen controversias de hechos que ameritan la cerebración de un juicio plenario.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

**I.**

Se desprende del expediente que, el 20 de diciembre de 2017, la Autoridad de Energía Eléctrica ("AEE" o "Recurrida") presentó *Demanda* sobre cobro de dinero contra Multinational, Universal, QBE, Integrand Assurance Company y Vassallo International Group, Inc. ("VIG").[1] Mediante este escrito, la AEE adujo que suplía energía eléctrica a las facilidades de VIG ubicadas en el municipio de Ponce. La AEE agregó que, por la energía eléctrica suministrada y cargos relacionados, VIG le adeudaba, al 15 de noviembre de 2016, la suma vencida, líquida y exigible de un millón novecientos cincuenta y nueve mil doscientos tres dólares con noventa y siete centavos. ($1,959,203.97).

Cónsono con lo anterior, la AEE agregó que Multinational, Universal, QBE e Integrand emitieron, cada una, fianzas para garantizar solidariamente a la Recurrida el pago de las deudas de VIG. En concreto, la AEE alegó que Multinational emitió la fianza sobre el contrato de servicio eléctrico con la denominación alfanumérica 5N16038065 con el fin de garantizar solidariamente a la Recurrida el pago de las deudas de VIG hasta la suma penal de ciento treinta y tres mil trecientos treinta y tres dólares ($133,333.00). Agregó que la Peticionaria canceló dicha fianza, efectivo el 17 de agosto de 2016. Por consiguiente, agregó que Multinational le adeuda a la Recurrida la cuantía antes mencionada, ya que se encontraba vencida, líquida y exigible. Asimismo, la AEE esgrimió que le requirió el pago del aludido monto a Multinational pero no obtuvo respuesta. En vista de lo anterior, entre los remedios esbozados en la *Demanda,* la Recurrida solicitó a la Peticionaria lo siguiente:

> (iii) a Multinational a pagar a la AEE: (a) la suma penal de la Fianza de Multinational de $133,333.00; (b) los intereses por mora a la tasa de 2/3% mensual sobre la suma de $133,333.00 desde el 6 de septiembre de 2017, inclusive; (c) los intereses sobre los intereses por mora a la tasa de 6% anual desde la fecha de la radicación de

---

[1] Véase SUMAC, Entrada 1.

la presente demanda; (d) intereses por temeridad; € una suma razonable por concepto de honorarios de abogado por temeridad, pero no menor de $13,333.30 (10% de la suma principal reclamada); y (1) una participación pro rata de las costas del litigio.[2]

En respuesta, el 3 de mayo de 2018, Multinational presentó *Contestación a Demanda,* en la cual negó ciertas alegaciones y, a su vez, levantó algunas defensas afirmativas.[3] Posteriormente, el 20 de febrero de 2019, Multinational presentó *Moción Solicitando Sentencia Sumaria.*[4] Al amparo de esta, alegó que la fianza 5N16038065 a la que la AEE hizo referencia en la demanda, en efecto no se emitió. Adujo que, Fulcro Insurance, representante de seguros de VIG, solicitó la emisión de una fianza en beneficio de este último, pero nunca pagó la prima correspondiente. Como corolario de lo anterior, la Peticionaria razonó que la fianza en cuestión no adquirió validez conforme lo establece la *Regla XXIX de Reglamento del Código de Seguros de Puerto Rico, Reglamento*, Núm. 4779 de 15 de septiembre de 1992.

Por su parte, el 7 de marzo de 2019, la AEE presentó *Oposición a "Moción Solicitando Sentencia Sumaria" y Solicitud de Sentencia Sumaria Parcial.*[5] En síntesis, aseveró que Multinational "emitió la Fianza sobre Contrato de Servicio Eléctrico número 5N16038065 (la "Fianza") para garantizar solidariamente a la AEE el pago de las deudas de VIG con la AEE por consumo de energía eléctrica y cargos relacionados hasta la suma penal correspondiente".[6] Por tal motivo sostuvo que la Peticionaria se convirtió en el principal pagador de la Recurrida de las deudas de VIG. Además, arguyó que la Peticionaria canceló la fianza en controversia, pero el aviso de dicha cancelación fue deficiente. Por estos fundamentos, la AEE solicitó que se denegara la moción de sentencia sumaria interpuesta por la

---

[2] Véase SUMAC, Entrada 1, pág. 12.
[3] Véase SUMAC, Entrada 3.
[4] Véase SUMAC, Entrada 4
[5] Véase SUMAC, Entrada 10
[6] Véase SUMAC, Entrada 10, pág. 2.

Peticionaria y, en cambio, declarara *Ha Lugar* su solicitud de sentencia sumaria y consecuentemente, le concediera lo siguiente:

(a) $149,833.00 por la suma penal de la Fianza; (b) intereses por mora al 8% anual sobre la suma de $149,833.00 desde el 6 de septiembre de 2017, inclusive, hasta la fecha de la sentencia; (c) intereses sobre los intereses por mora adeudados por MIC a la tasa fijada por la OCIF de tiempo en tiempo desde el 20 de diciembre de 2017, fecha en que la AEE radicó la demanda, hasta la fecha de la sentencia; (d) intereses por temeridad sobre todas las sumas adjudicadas en la sentencia a la tasa fijada por la OCIF vigente a la fecha de la sentencia desde el 6 de septiembre de 2017 hasta la fecha de la sentencia; (e) una suma no menor del 15% del total reclamado en la demanda por concepto de honorarios de abogados por temeridad; (f) las costas del litigio; y (g) los intereses post-sentencia a la tasa fijada por la OCIF vigente a la fecha de la sentencia sobre todas las sumas adjudicadas en la sentencia hasta su entero pago.[7]

Por su lado, el 17 de abril de 2019, Multinational presentó *Réplica a "Oposición a Moción Solicitando Sentencia Sumaria y Oposición a Solicitud de Sentencia Sumaria Parcial*.[8] En esta, reiteró su postura en cuanto a que, conforme la prueba presentada ante el foro primario, la Peticionaria nunca recibió pago alguno para la prima de la fianza 5N16038065, por lo que esta era nula.

De otra parte, el 24 de mayo de 2019, la AEE presentó *Dúplica a Réplica a Oposición a Moción Solicitando Sumaria de MIC [Multinational] y Réplica Sentencia Sumaria a Oposición a Solicitud de Sentencia*.[9] Al amparo de este escrito, esbozó que en el expediente obraba prueba que demostraba que Multinational se obligó a emitir la fianza en controversia a favor de VIG. Puntualizó que ello respondía a que VIG y sus garantizadores otorgaron un acuerdo de indemnización general y se obligaron a responderle a Multinational por cualquier desembolso que esta parte hiciera con relación a la fianza en cuestión. Asimismo, argumentó que la *Regla XXIX de Reglamento del Código de Seguros de Puerto Rico, supra*, no dispone

---

[7] Véase SUMAC, Entrada 10, pág. 19.
[8] Véase SUMAC, Entrada 6.
[9] Véase SUMAC, Entrada 7.

que una fianza que se emita sin el pago de la prima correspondiente al fiador sea nula.

Evaluado los alegatos de las partes, el 14 de marzo de 2023, el foro primario emitió *Sentencia Sumaria.*[10] Mediante esta, el foro *a quo* dispuso de varias mociones de sentencia sumaria que tenía ante su consideración, incluyendo la presentada por Multinational. En lo pertinente a la controversia ante nuestra consideración, el foro primario formuló las siguientes determinaciones de hecho en controversia:

### B. En cuanto a Multinational

23. VIG solicitó el trámite de la fianza objeto de esta controversia través de su propio representante de seguros, Fulcro Insurance.

24. VIG y ciertos de sus oficiales, accionistas, directores o afiliados suscribieron un acuerdo de indemnización general a favor de Multinational.

25. El 9 de febrero de 2016, Multinational emitió la Fianza Núm. 5N16038065 para garantizar solidariamente a la AEE el pago de las deudas de VIG por "consumo de energía eléctrica, renta de equipos y transformadores y toda obligación económica, accesoria, relacionada con el referido suministro de energía eléctrica".

26. En la fianza, se denomina a la AEE como el beneficiario, a Multinational como el asegurador y a VIG como el principal. Además, se le asigna una suma penal de $149,833.00.25.

27. En la fianza se incorporó e hizo formar parte el Reglamento.

28. El Reglamento dispone que los balances vencidos y no pagados cuyo total excede de (i) $1,000.00 o (ii) la suma de las últimas dos facturas vencidas, aunque dicho total sea menor de $1,000.00, devengan intereses al 8% anual.

29. La Fianza dispone que la misma "será ejecutable, y el Asegurador pagará prontamente al Beneficiario, cualesquiera sumas que le sean reclamadas, cuando el Principal incurra en mora en el pago de sus facturas vencidas; y el hecho que el Beneficiario no haga una o más de tales reclamaciones, cuando ocurran tales retrasos, no constituirá renuncia del Beneficiario para hacer tal(es) reclamación(es), cuando quiera, luego de que se incurra en atrasos subsiguientes".

30. La Fianza dispone que "[e]l Asegurador vendrá obligado al pago de las sumas objeto de esta fianza en cualquier tiempo, con sujeción sólo a las leyes de prescripción aplicables al Principal, renunciando el Asegurador a cualesquiera otros términos de prescripción o caducidad relativas al Contrato de Fianza".

31. La Fianza dispone que el "aviso del último estado de cuenta del Principal bajo el Contrato de Servicio Eléctrico será aviso suficiente".

---

[10] Véase SUMAC, Entrada 8.

32. Ni Fulcro ni MIC recibieron pago alguno por parte de VIG con relación a la fianza 5N16038065.

33. El 18 de julio de 2016, Multinational envió un aviso indicando que estaba cancelando la Fianza efectivo el 17 de agosto de 2016; no indicando que la Fianza nunca hubiese tenido validez.

34. Por cargos por consumo de electricidad solamente, incurridos en o con posterioridad al 9 de febrero de 2016, pero antes del 17 de agosto de 2016, VIG adeuda a la AEE la suma vencida, líquida y exigible de $425,138.13; y por cargos por consumo de electricidad solamente, incurridos en o con posterioridad al 18 de julio de 2016, pero antes del 17 de agosto de 2016, VIG adeuda a la AEE la suma vencida, líquida y exigible de $73,680.89.33 35.

35. El 16 de noviembre de 2016, VIG presentó petición de quiebra, al amparo del Capítulo 11 del Código de Quiebras ante la Corte de Quiebras, dando comienzo al caso de In re Vasallo International Group, Inc., Quiebra Núm. 16-09093 (BKT11).

36. Al solicitarle a la AEE la totalidad de sus expedientes relacionados a la alegada fianza 5N16038065 de Multinational, en sus contestaciones a los interrogatorios, la AEE alegó que sus expedientes "se vieron afectados por el paso del huracán María".

37. La AEE sostuvo que sus expedientes se vieron afectados por el paso del huracán María, por lo que desconoce si, en algún momento, sí contó con el original o copia de la Fianza.

38. El 5 de junio de 2017, la AEE reclamó a Multinational el pago de la suma penal bajo la fianza y le suministró a Multinational el estado de cuenta firmado y fechado de la cuenta de VIG para el periodo cubierto por la fianza.

39. Multinational no respondió a la reclamación de la AEE.

40. El 14 de noviembre de 2017, la AEE dio seguimiento a su reclamación con Multinational.

41. Multinational no respondió a la comunicación de seguimiento de la AEE del 14 de noviembre de 2017 sobre la reclamación.

42. El 20 de diciembre de 2017, la AEE presentó la demanda que dio origen al caso de epígrafe.

43. El 27 de diciembre de 2017, la AEE sirvió a Multinational copia de la demanda y el correspondiente emplazamiento.

44. Multinational no ha hecho pago alguno a la AEE bajo la fianza.[11]

Cónsono con estas determinaciones de hechos, el foro *a quo* resolvió que, la *Regla XXIX del Reglamento del Código de Seguros de Puerto Rico, supra,* sobre la cual Multinational fundamentó su alegato, no dispone que una fianza emitida sin que se haya pagado la prima correspondiente al fiador sea nula. Agregó el foro *a quo* que lo que sí establece el aludido texto es que el pago de la prima es pagadero y exigible desde el momento en que se emite o renueva la

---

[11] Véase SUMAC, Entrada 8, págs. 8-10.

fianza. Ante este cuadro, el foro primario declaró *No Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Multinational y declaró *Ha Lugar* la *Oposición a "Moción Solicitando Sentencia Sumaria" y Solicitud de Sentencia Sumaria Parcial* por la AEE. En consecuencia, el foro primario condenó a Multinational a pagarle a la AEE las siguientes partidas:

1. $149,833.00 de la suma penal de la fianza;
2. Intereses por mora al 8% anual sobre la suma de $149,833.00, desde el 6 de septiembre de 2017 hasta la fecha de esta sentencia;
3. Intereses sobre los intereses por mora a la tasa aplicable, según haya sido fijada por la OCIF para obligaciones privadas, desde el 20 de diciembre de 2017 hasta esta fecha;
4. Intereses post-sentencia a la tasa fijada por la OCIF vigente a la fecha de esta sentencia sobre todas las sumas adjudicadas.[12]

Inconforme con el resultado, el 30 de marzo de 2023, Multinational acudió ante esta Curia mediante recurso de *Apelación* en el alfanumérico KLAN202300261.[13] Ulteriormente, el 23 de junio de 2023, este Tribunal de Apelaciones emitió *Sentencia.*[14] En lo pertinente, esta Curia dispuso:

> Así, al considerar que no queda meridianamente claro que se haya emitido el pago de la prima del contrato de fianza con Multinational, resolvemos que los siguientes hechos están en controversia:
>
> 1. Si Multinational recibió algún pago por parte de Vassallo por concepto de la prima del contrato de fianza.
>
> 2. Si Multinational emitió la fianza Núm. 5N16038065 para garantizar solidariamente a la AEE el pago de las deudas de Vassallo por consumo de energía eléctrica, renta de equipos y transformadores y toda obligación económica, accesoria, relacionada con el referido suministro de energía eléctrica.
>
> Es menester enfatizar que cualquier duda sobre la existencia de una controversia sobre los hechos materiales del caso debe resolverse contra la parte promovente. Por tanto, concluimos que, en este caso, no procedía resolver sumariamente pues subsisten controversias de hecho que deben dirimirse en un juicio plenario. En consecuencia, revocamos el dictamen apelado por Multinational.[15]

Así las cosas, tras varios asuntos procesales los cuales son innecesarios detallar, el 28 de febrero de 2025, Multinatiuonal

---

[12] Véase SUMAC, Entrada 8, págs. 26-27.
[13] Véase SUMAC, Entrada 12.
[14] Véase SUMAC, Entrada 13.
[15] Véase SUMAC, Entrada 13, pág. 21.

presentó *Solicitud de Sentencia Sumaria.*[16] En esencia, argumentó que, no existen hechos materiales en controversia respecto a que Multinational nunca recibió pago alguno por parte de VIG por concepto de la prima de la fianza número 5N16038065. Igualmente, esbozó que no quedaba duda alguna en cuanto a que la referida fianza nunca se emitió. Razonó que, por consiguiente, de conformidad con la *Regla XXIX de Reglamento del Código de Seguros de Puerto Rico, supra*, dicho contrato de fianza nunca adquirió validez, por lo que Multinational no está obligada a responder solidariamente por las deudas reclamadas por la AEE.

Por su parte, el 3 de abril de 2025, la AEE presentó *Oposición a Moción de Sentencia Sumaria.*[17] En concreto, esbozó que los asuntos esgrimidos por parte de la Peticionaria debían ser dilucidados en un juicio plenario.

Tras evaluar los argumentos de las partes, el 11 de septiembre de 2025, notificado al día siguiente, el foro primario emitió *Resolución.*[18] Por virtud de esta, el foro *a quo* dispuso lo siguiente:

> I. HECHOS ESENCIALES SOBRE LOS CUALES NO EXISTE CONTROVERSIA
>
> 1. La solicitud de la fianza número 5N16038065 se hizo para cumplir con los requisitos que la AEE estableció como condición sine qua non para el expendio del servicio eléctrico a Vassallo.
>
> 2. El 18 de julio de 2016, MIC notificó a la AEE un documento titulado Aviso de Cancelación.
>
> 3. Por disposición del Código de Seguros, el Aviso de Cancelación se tiene que notificar al beneficiario (aquí, la AEE).
>
> II. HECHOS ESENCIALES QUE ESTÁN EN CONTROVERSIA
>
> 1. Si Multinational recibió algún pago por parte de Vassallo por concepto de la prima del contrato de fianza.
>
> 2. Si Multinational emitió la fianza Núm. 5N16038065 para garantizar solidariamente a la AEE el pago de las deudas de Vassallo por consumo de energía eléctrica, renta de equipos y transformadores y toda obligación económica, accesoria, relacionada con el referido suministro de energía eléctrica.[19]

---

[16] Véase SUMAC, Entrada 14.
[17] Véase SUMAC, Entrada 5.
[18] Véase SUMAC, Entrada 15.
[19] Véase SUMAC, Entrada 15, pág. 10.

Cónsono con estas determinaciones, el foro primario expresó lo siguiente:

> Evaluados minuciosamente los escritos, así como la prueba anejada, concluimos que no nos encontramos en posición de poder resolver las presentes controversias sumariamente. La parte demandada no ha colocado a este Tribunal en posición para dictar una sentencia sumaria, a nuestro entender aún persisten las mismas controversias consignadas por el Tribunal de Apelaciones en la Sentencia del 23 de junio de 2023. Además, tenemos ante nos controversias relacionadas directamente con la credibilidad e intención de todas las partes envueltas en el presente pleito, lo cual, conforme a la jurisprudencia, el uso del mecanismo de la sentencia sumaria es desalentado.[20]

Inconforme, el 10 de octubre de 2025, Multinational presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> PRIMER ERROR
>
> El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al denegar la *Solicitud de Sentencia Sumaria* promovida por MIC, en directa contravención a la *ley* del caso pautada por este Tribunal de Apelaciones, el cual determinó que la prima de un contrato de fianza es exigible y pagadera a la fecha de efectividad del contrato, y , que, interpretada de la forma más favorable a la AEE no presentó prueba alguna que, interpretada de la forma más favorable a la AEE y concediéndole a ésta el beneficio de toda inferencia razonable, estableciera por preponderancia de la prueba que MIC recibió algún pago por concepto de la prima del contrato de fianza.
>
> SEGUNDO ERROR
>
> El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al establecer que existía controversia sobre el MIC recibió algún pago por concepto de la prima del contrato de fianza, a pesar de que, en este caso, culminado el descubrimiento de prueba, MIC proveyó certificación jurada de no haber recibido tal pago y la AEE no presentó prueba alguna que, interpretada de la forma más favorable a la AEE y concediéndole a ésta el beneficio de toda inferencia razonable, controvirtiera la certificación de MIC y estableciera por preponderancia de la prueba que MIC recibió algún pago por concepto de la prima del contrato de fianza.
>
> TERCER ERROR
>
> El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al ignorar la Contestación a Primer Requerimiento de Admisiones y la Contestación de la AEE a Segundo Pliego de Interrogatorios y Requerimientos de Admisiones y Producción de Documentos de Multinational mediante las cuales la AEE admitió y estableció como hechos incontrovertidos (1) que no tiene evidencia del pago de la fianza número 5N16038065 solicitada a MIC, (2) que no tiene evidencia de alguna comunicación de MIC a la AEE en la que MIC certifique que la fianza número 5N16038065 solicitada a MIC había sido

---

[20] Véase SUMAC, Entrada 15, pág. 12.

pagada, (3) que no tiene evidencia alguna de MIC a ningún tercero en la que MIC certifique que la fianza numero 5N16038065 solicitada a MIC había sido pagada, y (4) que no solicita a sus clientes evidencia de pago de las fianzas sobre los contratos de servicio eléctrico —a pesar de que la letra clara del *Endoso Regla XXIX,* que forma parte integral del contrato de fianza, dispone expresamente que "[s]i usted es el beneficiario de la [Fianza], asegúrese de recibir evidencia de pago".

CUARTO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al ignorar las declaraciones juradas presentadas por MIC —la cuales no fueron controvertidas por la AEE— que establecen como hechos incontrovertidos (1) que Fulcro nunca recibió el pago correspondiente para la fianza número 5N16038065, y (2) que MIC realizó un minucioso examen del historial de pago de la solicitud de fianza número 5N16038065 y no existe evidencia de pago alguno, sea parcial o total, por concepto de la prima de la solicitud de fianza en cuestión.

QUINTO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al no establecer como hechos incontrovertidos, a pesar de la prueba documental que no fue controvertida, los siguientes: (1) que el formulario titulado *Fianza sobre Contrato de Servicio Eléctrico* dispone que "[e]n testimonio de lo cual, las partes arriba obligadas suscriben este instrumento bajo los correspondientes sellos oficiales, hoy día 09 de FEBRERO de 2016, insertándose y estampándose con el nombre y sello corporativo y otorgado por los oficiales autorizados en sus cuerpos directivos", (2) que el formulario titulado *Fianza sobre Contrato de Servicio Eléctrico* está suscrito y sellado únicamente por María Morales Pacheco, Representante Legal de MIC, (3) que ningún representante de VIG suscribió ni estampó el sello corporativo en el formulario titulado *Fianza sobre Contrato de Servicio Eléctrico*, (4) que en el formulario titulado *Fianza sobre Contrato de Servicio Eléctrico* tampoco figura quién, si alguien, fue el oficial autorizado de VIG que participó en este alegado negocio jurídico, (5) que contrario a sus reclamaciones contra las demás aseguradoras codemandadas de epígrafe, la AEE ha fracasado en producir una versión de la fianza número 5N16038065 que contenga las firmas y aceptaciones de todas las partes contratantes, (5) que el formulario titulado *Fianza sobre Contrato de Servicio Eléctrico* no era suficiente para concluir que, el 9 de febrero de 2016, MIC emitió una fianza para garantizar solidariamente a la AEE el pago de las deudas de VIG, toda vez que el mismo no se perfeccionó conforme a sus propias cláusulas, (6) que la mera existencia del formulario titulado *Fianza sobre Contrato de Servicio Eléctrico* no implica que el referido contrato se hubiera perfeccionado y/o hubiera advenido a la vida jurídica, (7) que el *Endoso Regla XXIX,* que forma parte integral del contrato de fianza, lee como sigue; "Esta fianza está sujeta a la Regla XXIX del Código de Seguros de Puerto Rico. Para que se válida, la fianza debe haber sido pagada a su emisión o a su renovación, según aplique. Si usted es el beneficiario de la misma, asegúrese de recibir evidencia de pago", (8) que el documento titulado *Acuerdo General de Indemnización (General Agreement of Indemnity)* es un contrato privado mediante el cual, entre otras cosas, VIG se obligó a pegarle a MIC la prima de la fianza, (9) que Rafael Vasallo en su carácter en su carácter personal, suscriben el *Acuerdo General de Indemnización,*

(10) que el pago a MIC la prima de la fianza en cuestión, (11) que la AEE no se asegura de la existencia y validez de la fianza que le presentan toda vez que no requiere evidencia del pago de la prima de la fianza previo a proveer los servicios de energía eléctrica a sus clientes, (12) que la AEE no corroboró si en efecto la fianza número 5N16038065 se había emitido previo a proveer los servicios de energía eléctrica a VIG, y (13) que la AEE ignoró la letra clara del *Endoso Regla XXIX*, que forma parte integral del contrata de fianza, y no se aseguró de "recibir evidencia de pago [de la prima de la Fianza]".

SEXTO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al no tomar conocimiento judicial de los hechos adjudicativos de (1) que para la fecha de los hechos de la *Demanda* de epígrafe, la AEE llevaba décadas con el monopolio de generación y distribución de energía eléctrica en Puerto Rico, y (2) que dado a su especialidad, peritaje y experiencia lidiando con todos los clientes de energía eléctrica en la isla y, específicamente, con las grandes industrias y empresas comerciales, la AEE tenía amplia experiencia en el m anejo de contrato de fianza.

SÉPTIMO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al establecer que existía controversia sobre si MIC había emitido la fianza número 5N16038065 para garantizar solidariamente a la AEE el pago de las deudas de VIG por consumo de energía eléctrica, renta de equipos y transformadores y toda obligación económica, accesoria, relacionada con el referido suministro de energía eléctrica, a pesar de que, en este caso, culminado el descubrimiento de prueba, la AEE no presentó prueba alguna que, interpretaba de la forma más favorable a la AEE y concediéndole a ésta el beneficio de toda inferencia razonable, estableciera por preponderancia de la prueba que MIC recibió algún pago de VIG por concepto de la prima del contrato de fianza por lo que, conforme a la *ley* del caso establecida por el TA, ante la ausencia de pago de la prima, la fianza nunca advino a la vida jurídica ni adquirió validez.

OCTAVO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al ignorar la Contestación a Primer Requerimiento de Admisiones y la Contestación de la AEE A Segundo Pliego de Interrogatorios y Requerimiento de Admisiones y de Producción de Documentos de Multinational mediante las cuales la AEE admitió y estableció como hechos incontrovertidos (1) que no tiene el original de la fianza número 5N16038065 solicitada a MIC, (2) que o tiene expediente en el que guarde el original de la Fianza sobre Contrato de Servicios Eléctrico emitida por MIC, (3) que tiene amplia documentación sobre las fianzas de las demás aseguradoras codemandadas de epígrafe pero no sobre la fianza de MIC, (4) que, culminado el descubrimiento de prueba, los únicos documentos que la AEE tiene sobre la fianza número 5N16038065 son la Carta de CLLC a MIC del 5 de junio de 2017 (Reclamación de la AEE a MIC del pago de $133,333.00), el formulario titulado Fianza sobre Contrato de Servicio Eléctrico , el Aviso de Cancelación de MIC a la AEE del 18n de julio de 2016 y el Acuerdo General de Indemnización, (5) que el proceso ordinario de archivo de fianzas de los abogados de la AEE

consiste en que "el cliente de la AEE trae el original o una copia de la fianza que se le solicita y ese documento se archiva en el expediente del cliente, así como los distintos avisos de continuación, aviso de cancelación y endosos que se pueda recibir" y (6) que la AEE no tiene copia de la fianza número 5N16038065 solicitada MIC, debidamente firmada y cumplimentada por todas las partes.

NOVENO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al ignorar las declaraciones juradas por MIC —las cuales no fueron controvertidas por la AEE— que establecen como hechos incontrovertidos (1) que las tres partes de una fianza son el garantizador (aquí MIC) el principal (aquí VIG) y el beneficiario (aquí AEE), (2) en qué consiste el proceso ordinario de MIC al momento de evaluar una solicitud para la expedición de una fianza, (3) que la asignación de un número de referencia y la preparación de documentos, según establecido por el Código de Seguros, no significa que la fianza se haya activado o que ofrezca algún tipo de cubierta, (4) que lo que activa la garantía es el pago de la prima y si no se ejecuta el cobro de dicho pago la garantía nunca entra en vigor, (5) que para que una fianza adquiera fuerza y vigor o para que se active el contrato de la garantía el principal tiene que pagar la prima en su totalidad, (6) que mientras la prima no se haya pagado, el documento de la fiana es un mero documento sin ninguna validez, fuerza o vigor como garantía, (7) que la advertencia del requisito de pago de la Regla XXIX esta incluida de forma visible como parte de la factura que se le hace llegar al principal (aquí, VIG), (8) que al enviar la factura al principal (aquí VIG) MIC advirtió por escrito a VIG, de forma clara y visible, que la activación de la fianza en cuestión dependía del pago de su prima, conforme al requisito de la Regla XXIX del Código de Seguros, (9) que existe un documento que se conoce como Carta de Pago que certifica que la garantía de una fianza se ha activado en toda su fuera y vigor, (10) que la Carta de Pago se le envía al beneficiario (aquí AEE) para notificar que el principal (aquí VIG) pagó la prima de la fianza y, en consecuencia, la cubierta de la fianza solicitada ha sido activada, (11) que las fianzas activa no se pueden cancelar una vez se recibe el pago de la prima y permanecen activas hasta su vencimiento, y (12) que, en este caso, MIC nunca emitió ni notificó a la AEE la Carta de Pago porque MIC nunca recibió el pago de la prima de la fianza número 5N16038065.

DÉCIMO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al ignorar la Contestación a Primer Requerimiento de Admisiones mediante la cual al AEE admitió y estableció como hechos incontrovertidos (1) que no tiene evidencia de que MIC haya notificado a VIG la Carta de Pago, y (2) que no tiene evidencia de que MIC haya notificado a la AEE la Carta de Pago.

UNDÉCINO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al ignorar las declaraciones juradas presentadas por MIC —las cuales no fueron controvertidas por la AEE— que establecen como hechos incontrovertidos (1) que si después de un tiempo razonable el principal (aquí, VIG) no paga la prima de la fianza, MIC emite un Aviso de Cancelación para notificar la solicitud aprobada nunca se activó, por lo que la intención

de garantía queda cancelada o anulada por falta de pago, (2) que emitir el Aviso de Cancelación por falta de pago es un requisito del Código de Seguros, (3) que el Aviso de Cancelación de ninguna forma significa o implica que la aprobación de la solicitud de fianza no pagada tuvo vigencia y ofrecía alguna cubierta en algún momento, (4) que el Aviso de Cancelación es un trámite administrativo procesal informativo que ni quita ni da derechos o cubiertas, (5) que el Aviso de Cancelación es un documento que ordinariamente se utiliza en estos casos para notificar que la condición del pago de la prima no se cumplió, por lo que la cubierta en cuestión nunca se activó y, en consecuencia, nunca se perfeccionó el contrato de garantía, (6) que, el 29 de febrero de 2016, MIC, emitió la documentación correspondiente a la solicitud de fianza número 5N16038065, (7) que, el 29 de febrero de 2016, MIC emitió la factura para la prima de la fianza número 5N16038065 que incluía la advertencia de la Regla XXIX anteriormente descrita, (8) que MIC entregó a VIG la documentación relacionada a la solicitud de fianza a través de Fulcro, (9) que, ante la falta de pago por parte de VIG, MIC nunca emitió la Carta de Pago, (10) que MIC nunca le representó a la AEE que la fianza número 5N16038065 había adquirido vigencia, (11) que en ningún momento Fulcro le hizo representación alguna a la AEE sobre la existencia o validez de la fianza aquí en controversia, (12) que Fulcro nunca le entregó a la AEE el original de la fianza en cuestión, y (13) que le hecho que la AEE tenga copia del formulario titulado *Fianza sobre Contrato de Servicio Eléctrico* firmado y ponchado únicamente por MIC, así como el Acuerdo General de Indemnización suscrito por VIG y varios de sus principales ejecutivos en consideración a la emisión de la fianza, no significa tuviera validez, fuerza o vigor como garantía de pago a la AEE.

DUODÉCIMO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al no tomar conocimiento judicial del asunto de derecho de que la notificación de un documento titulado Aviso de Cancelación no significa que el contrato de fianza se haya perfeccionado, toda vez que la denominación de un documento no determina su naturaleza jurídica.

DECIMOTERCER ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al determinar que la Oposición a Moción de Sentencia Sumaria de la AEE cumplió con los requisitos que le impone la Regla 36.3(b) de Procedimiento Civil de controvertir específicamente y por separado los hechos propuestos por la parte promovente de la sentencia sumaria cuando, de una revisión de las alegaciones de la AEE mediante las cuales, alegadamente, controvirtió los hechos propuestos por MIC se desprende que la AEE descansó en las mismas alegaciones especulaciones, afirmaciones, y negaciones expresadas hasta el momento y, culminado el descubrimiento de prueba en este caso, no cumplió con probar por preponderancia de la prueba que tiene evidencia para demostrar que VIG pagó a MIC la prima de la fianza en este momento, por lo que tampoco tendrá prueba alguna a estos efectos para presentar en el juicio en su fondo.

DECIMOCUARTO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al denegar la Solicitud de Sentencia Sumaria promovida por MIC a pesar de que los hechos incontrovertidos sustentados por la prueba documental presentada —los cuales no fueron controvertido por la AEE— se desprende (1) que la celebración del juicio en su fondo es innecesaria porque no existe una controversia real sobre hechos materiales y la controversia del caso no esta basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad, (2) que la AEE no cuenta con evidencia suficiente para probar que VIG pagó a MIC la prima de la fianza —a pesar de haber culminado el descubrimiento de prueba y haberse realizado un descubrimiento amplio, adecuado, exhaustivo y completo—, y (3) que, como cuestión de derecho, ante la ausencia de pago de la prima de la fianza la misma nunca entro en vigor, por lo que la AEE carece de una reclamación que justifique la concesión de un remedio.

DECIMOQUINTO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al determinar que aún persisten las mismas controversias de hechos consignadas por el TA en la Sentencia del 23 de junio de 2023, a pesar de que (1) MIC presentó extensa prueba documental adicional a la que fue considerada previamente por el TA al emitir la Sentencia aludida y la misma no fue controvertida por la AEE conforme a derecho, y, en este caso, (2) el descubrimiento de prueba culminó, no queda descubrimiento pendiente, y la AEE no presentó prueba alguna que demuestre por preponderancia de la prueba que VIG pagó a MIC la prima de la fianza en cuestión ni expuso qué prueba documental o testifical se propone a presentar en el juicio para establecer que VIG realizó dicho pago.

DECIMOSEXTO ERROR

El TPI abusó de su discreción en incurrió en un error manifiesto en la aplicación del Derecho al determinar que la presente controversia está relacionada directamente con la credibilidad e intención de todas las partes envueltas en el presente pleito, sin especificar cuáles son los asuntos de credibilidad o intención que hay que dilucidar en el juicio en su fondo. Máxime cuando, en lo pertinente a la presente controversia, la única prueba testifical que se utilizará en el juicio en su fondo es la propuesta por MIC, testimonio bajo juramento que fue presentado junto a la Solicitud de Sentencia Sumaria promovida por MIC, la cual no fue controvertida por la AEE, y la AEE no cuenta con prueba documental o testifical alguna en controvierta las declaraciones juradas presentadas por MIC.

DECIMOSÉPTIMO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al determinar que existe controversia sobre si MIC recibió algún pago de VIG por concepto de la prima del contrato de fianza cuando de las declaraciones juradas presentadas por MIC y de las admisiones de la AEE en sus contestaciones e interrogatorios y al requerimiento de admisiones se desprende que, culminado el descubrimiento de prueba, la AEE no tiene prueba alguna para sostener que VIG pagó la prima de la fianza y no existe inferencia o interpretación alguna que pudiera hacer a favor de la AEE que controvierta el hecho

de la ausencia total de la prueba sobre el hecho esencial de que MIC no recibió de VIG el pago de la prima de la fianza.

DECIMOCTAVO ERROR

El TPI abusó de su discreción e incurrió en un erro manifiesto en la aplicación del Derecho al determinar que existe controversia sobre si MIC recibió algún pago de VIG por concepto de la prima del contrato de fianza y sobre si MIC recibió algún pago de VIG por concepto de la prima del contrato de fianza y sobre si MIC, en efecto, emitió la fianza en cuestión cuando (1) la Solicitud de Sentencia Sumaria promovida por MIC es una bajo la modalidad de la insuficiencia de la prueba —pues, por razones metafísicas y de sentido común, los únicos hechos demostrables con prueba directa son aquellos que, en efecto, hayan ocurrido y es imposible probar con prueba directa hechos que no hayan ocurrido, los únicos hechos demostrables con prueba directa son aquellos que, en efecto, hayan ocurrido y es imposible probar con prueba directa hechos que no hayan ocurrido, los cuales pueden ser demostrados únicamente con prueba circunstancial— y no bajo las modalidades más habituales de producir prueba documental para negar un elemento esencial de la causa de acción o para probar una de las defensas afirmativas, y, en estos supuestos, (2) cuando la parte promovente prueba por preponderancia de la prueba un caso prima facie de insuficiencia de la prueba, el peso de la prueba cambia y es la parte promovida, sobre la cual recae el peso probatorio último de demostrar los elementos de su causa de acción en el juicio en su fondo, quien viene obligada a presentar prueba que demuestre, por preponderancia de la prueba, que cuenta con la evidencia suficiente para que un tribunal pueda resolver a su favor y una scintilla de prueba es insuficiente para derrotar la solicitud de sentencia sumaria bajo esta modalidad.

DECIMONOVENO ERROR

El TPI abusó de su discreción e incurrió en un error manifiesto en la aplicación del Derecho al determinar que existe controversia sobre si MIC recibió algún pago de VIG por concepto de la prima del contrato de fianza y sobre si MIC, en efecto, emitió la fianza en cuestión cuando (1) la única "prueba" con la que contó la AEE era el Aviso de Cancelación y sus alegaciones incorrectas, especulativas, conclusorias y sin valor probatorio alguno de que "[e]ste Aviso de Cancelación es una admisión de parte de MIC de que la fianza se emitió, pues de lo contrario, no hubiese impedido que se emitiera la misma", (2) MIC rebatió las alegaciones non-sequitur de la AEE mediante la presentación de sendas declaraciones juradas que explican el trámite administrativo ordinario que realiza MIC cuando se le presenta una solicitud para la expedición de una fianza y en virtud de qué se emite el documento titulado Aviso de Cancelación y porque dicho documento no tiene el alcance que pretende darle la AEE, por lo que, conforme al estado de Derecho aplicable a las solicitudes de sentencia sumaria, (3) la AEE venía obligada a presentar declaraciones juradas o cualquier otra prueba documental que controvirtiera el testimonio bajo juramento presentado por MIC y, sin embargo, no lo hizo y descansó únicamente en sus alegaciones incorrectas, especulativas, conclusorias y sin valor probatorio alguno.

El 10 de octubre de 2025, esta Curia emitió *Resolución* en la cual se le concedió hasta el 27 de octubre de 2025 a la parte

Recurrida para que mostrara causa por la cual no se debía expedir el auto de *certiorari.* Oportunamente, el 27 de octubre de 2025, la parte Recurrida compareció mediante escrito intitulado *Moción en Cumplimiento de Resolución y en Oposición a la Expedición del Auto de Certiorari.* Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.
### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo. Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (4) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del

recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023). La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd*. Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Sentencia Sumaria

La sentencia sumaria es el mecanismo procesal cuyo propósito principal es facilitar la solución justa, rápida y económica de los litigios que no presentan controversias genuinas de hechos materiales y, por lo tanto, no ameritan la celebración de un juicio a

fondo. *Soto y otros v. Sky Caterers,* 215 DPR___ (2025), 2025 TSPR 3, pág. 10; Véase, además, *BPPR v. Cable Media,* 215 DPR___ (2025), 2025 TSPR 1. La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36, permite que, en un litigio, cualquiera de las partes le solicite al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.* No obstante, para que una sentencia sumaria proceda, es necesario que la prueba que acompaña la solicitud de sentencia sumaria debe surgir preponderantemente la inexistencia de controversia sobre los hechos medulares del caso. *Cooperativa de Seguros Múltiples de Puerto Rico y otro v. Estado Libre Asociado de Puerto Rico y otros*, 216 DPR___ (2025), 2025 TSPR 78, pág. 9.

Para poder demostrar eficientemente la falta de controversia sobre hechos esenciales, el promovente de la sentencia sumaria debe: (1) exponer las alegaciones de las partes; y (2) desglosar en párrafos debidamente enumerados los hechos sobre los cuáles, a su entender, no hay controversia. Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3.

En *Meléndez González et al. V. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estableció "el estándar específico" que debe utilizar este Foro al "revisar denegatorias o concesiones de Mociones de Sentencia Sumaria". A esos efectos, el Tribunal dispuso que:

> el Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el

Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018).

Es decir, planteada una revisión de sentencia sumaria, el Tribunal de Apelaciones está en la misma posición que el Tribunal de Primera Instancia para resolver, por lo que debe evaluar las mociones presentadas en el foro primario y cumplir con los requisitos dispuestos en la Regla 36 de Procedimiento Civil, *supra,* al emitir su dictamen. *Meléndez González et al. v. M. Cuebas, supra.* "[L]a revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor". *Birriel Colón v. Econo y otros*, 213 DPR 80, 91-92 (2023) citando a *Meléndez González et al. v. M. Cuebas, supra.*

En tal sentido, como parte de nuestra función revisora, es nuestro deber evaluar todos los documentos que obren en el expediente de manera tal que, previo a determinar la procedencia de una solicitud de sentencia sumaria, se deba realizar un balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles. *BPPR v. Cable Media,* supra*,* pág. 9 (citas omitidas). Cónsono con lo anterior, en el ejercicio de nuestra función revisora, estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 994 (2024).

Por otra parte, nuestra más Alta Curia ha definido el concepto hecho material de la siguiente forma: un hecho material o esencial es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Consejo de Consejo Tit.*

*v. Rocca Dev. Corp., et als.,* supra, 215 DPR\_\_ (2025) 2025 TSPR 6, pág. 15. Por ende, la parte promovente tiene el deber de exponer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material. *Soto y otros v. Sky Caterers,* supra, pág. 11.

Por su parte, la Regla 36.4 de Procedimiento Civil, *supra*, dispone que si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos. De la misma forma, el tribunal deberá establecer hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando así que los procedimientos ulteriores sean justos en el pleito. *Íd.* A tono con lo anterior, la precitada regla establece que, al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. *Íd.*

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, los Peticionarios no han demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constataron que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos.

Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

**IV.**

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones